(72 South. 717)

No. 20733.

POTTS v. ARKANSAS MILL CO.

(Oct. 6, 1916.)

*(Syllabus by the Court.)*

MASTER AND SERVANT ☞101, 102(1), 150(1)—INJURIES TO SERVANT—DUTY OF MASTER.

The master is bound to furnish the servant with safe appliances with which to do his work, and to give him such warning of danger as the circumstances of the particular case require.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 135, 171, 178, 179, 297, 300; Dec. Dig. ☞101, 102(1), 150(1).]

Appeal from Sixteenth Judicial District Court, Parish of Evangeline; B. H. Pavy, Judge.

Action by Joseph Potts against the Arkansas Mill Company. Judgment for plaintiff, and defendant appeals. Affirmed.

White, Holloman & White, of Alexandria, for appellant. G. H. Couvillon, of Marksville, and E. A. Edwards, of Ville Platte, for appellee.

MONROE, C. J. Defendant has appealed from a verdict and judgment condemning him to pay plaintiff $1,000 as damage for injuries sustained by him whilst in defendant's employ and engaged in the work, to which he had been assigned, of feeding a molding planer; the ground of action alleged being that the planer was not in proper condition in that a spring, the function of which was to hold against the guide the strips that were being converted into "bats," was loose, and failed to discharge that function, by reason whereof plaintiff was obliged to hold the strips in position by pushing, and that, while so pushing against one of the strips, it broke, causing him to fall upon certain rapidly moving belting that was negligently exposed, with the result that, before he could be released, he was burned by the friction.

It is shown that plaintiff was about 21 years of age, and had had considerable experience about saw and planing mills, but very little in feeding molding planers; and that, prior to the day of the accident, he had operated the planer in question but two or three times, at intervals, and then for but a day at a time. Mr. Ramsay, defendant's foreman, says of him:

"Well, he was a kind of a green hand on the job. He never fed a great deal;" that he was "kind of slow and easy-going; hard to learn anything."

He also gave this testimony:

"Q. When you ordered him to that machine, did you warn him of the danger? A. No; I never told him anything about the danger. He was old enough to see that."

The accident occurred, we think, about as stated in the petition. The spring that should have pressed the strips against the guide, in order that they might be carried straight through the machine, was loose, and plaintiff had to substitute hand pressure in place of it, and, by reason of the fact that it had a small knot in it, one of the strips broke and plaintiff fell forward on the belts, of which there were several within a foot or so of him, perhaps, waist-high, and in such rapid motion that, within a period measured rather by seconds than minutes, 5x12 inches of skin was removed from his chest and side, and 4x8 inches from his right forearm, and he received injuries to one of his elbows, his left arm, his chin, and hand. The physician who attended him, and who was the regular physician of the defendant company, speaking of the injuries to the chest, side, and forearm, described them as third degree burns, and said that they amounted to a permanent destruction of the skin; that which replaces the skin in such cases being scar tissue, which performs but few of the functions of the skin.

The doctor was of the opinion that plaintiff would suffer no permanent impairment of his physical strength or capacity. Defendant's learned counsel argue, and cite an abundance of authority, to the effect that an experienced man assumes the risks incidental to the work which he undertakes to perform, and that an obvious risk, or one that is known to him, is regarded as assumed even by an inexperienced workman; but we are of opinion that the argument and the authorities are alike inapplicable to this case. Plaintiff had been accustomed to "feeding" flooring and ceiling planers, which, as we understand, differ somewhat from the molding planer, and, although he seems to have considered himself an experienced feeder, the foreman knew that he was a green hand at the job to which he assigned him. It is

true that the belts were before his eyes, and it was obvious that, if he fell on them he would be hurt, but the danger of his falling arose from conditions that were not within his experience, and did not obviously lead to his falling, being the necessity of his pressing the strips against the guide and the danger that a strip might have a knot in it and break unexpectedly. It is said that he could have seen the knot, and that it was his duty to do so, but the testimony does not go that far. It does not inform us whether the knot was visible on one or both sides of the strip, and it does show that plaintiff received the strips from a grader whose duty it was to inspect them and deliver to him only those which were fit to make the product that was being manufactured, and, though it may have been the duty of the feeder to reject any defective strip that attracted his attention, it is quite possible that he saw the particular strip in question only upon its good side and went no further, and that the knot was visible only from the other side. As to the belts, the testimony creates the impression that it would be safer to cover, or guard, them in some way, but does not enable us to say that it would be practicable to do so. If, however, the exposure of the belts was unavoidable, and the defective adjustment of the spring, necessitating the hand pressure upon the strips, a fact, defendant should have been warned of the possibility that some strip might prove defective notwithstanding that it had been graded, and might break under the pressure ordinarily applied.

We conclude that defendant was at fault in not giving the warning required by the circumstances of the case, and has properly been held liable for the consequences. Plaintiff has answered the appeal praying for an increase in the amount of the award, but the evidence does not authorize any change in the finding of the jury upon that question.

Judgment affirmed.